A94A1965. HAYES v. THE STATE.
(449 SE2d 663)

BIRDSONG, Presiding Judge.
Marion Stanley Hayes appeals his judgment of conviction of entering an automobile with intent to commit a theft and burglary.

A neighbor who lived across the street from the Hill Laundry testified that he was outside that evening working on his car when he saw two men coming around the side of the laundry. The men were carrying a backpack or bookbag. After stopping for several minutes by a side door, the men proceeded to the front of the laundry building and fumbled with the garage bay doors for about 15 minutes. An object was pulled from the bag and was used in forcing the bay doors open. After partially opening the bay doors, one of the men went inside and extended the opening wider. A truck and a van were parked inside the garage of the building. After both men were inside the building, the neighbor saw one of the men inside the truck. At that

time the taillights came on in the van, causing the neighbor to conclude that the other man must have entered the van. The neighbor called the police. When the police arrived, one of the men — later identified as co-defendant William Sterling Baker — exited the garage and was apprehended.

Officer Crenshaw testified that, at approximately midnight, he received a police call that a concerned citizen had reported a burglary in progress and was keeping in telephone communication with the dispatcher. Responding to the call, he and three other officers went to the laundry. It had snowed heavily that night and fresh snow was all over the ground. As Officer Crenshaw went around the rear of the building, he heard two of the officers yelling at someone, and subsequently observed them in the process of arresting one of the suspects. Officer Crenshaw observed a torn metal hole on the west side of the building; it was like someone had tried to cut into the aluminum and rip it back. Tracks in the fresh snow led from a door behind the building to the side of the building where an attempt had been made to cut the hole. He ultimately went to the front and entered the laundry building; Crenshaw found that the van therein was still running. A white laundry truck was also in the building. As he started through the bay doors, Crenshaw observed a black male dressed in black clothing and wearing a hat run away from the van; the man had something strapped to his back. The male had been on the passenger side area of the vehicle and the passenger door was open. Officer Crenshaw then observed Officer Stapler attempting to climb the back fence; the officer was facing the subject dressed in dark clothing who had already climbed the fence. After the two officers got over the fence, they started searching for the subject who had run out of sight. Officer Stapler subsequently found the black male in a nearby shed and apprehended him; the suspect had a cloth backpack or rucksack on his back and fit the description of the man Crenshaw observed fleeing from the building. After being arrested, appellant asked Officer Crenshaw to retrieve his hat, which was lying in the snow. Crenshaw searched the backpack after appellant's arrest and found several cassette tapes and several screwdrivers, one of which was missing its handle. Officer Crenshaw made an in-court identification of appellant Hayes as the person apprehended by Stapler at the shed. Subsequent investigation revealed that because of a special switch the owner had installed on the van, the only way it could be started was by "hotwire." Crenshaw conceded that the police investigation never determined exactly how the appellant and co-accomplice gained entry into the laundry; but the owner testified that no one had permission to be in his laundry building the evening of the incident.

Officer Pearson testified that he assisted in the apprehension of accomplice Baker, and that the police found a pair of pliers in front

of the bay doors. During the incident Pearson saw the shadowy figure of a person inside the building near the passenger side of the van.

Officer Stapler testified that, at the scene, he entered the front of the building through the open bay doors. While Stapler was checking around a laundry machine, he saw a person run out the door and gave pursuit. The fleeing suspect was a black male wearing a green army jacket and black hat. For about ten seconds, Stapler got hung up on the fence following the suspect, giving the suspect time to run through the backyard of the cleaners. However, Stapler was able to follow the suspect's footprints in the snow; the snow was deep and those were the only footprints in that area. Stapler found the suspect in a shed-like structure that was built beneath an older house; the structure was located in the yard into which the fleeing suspect had jumped. The suspect was still wearing the green army jacket and was holding a small bag. Officer Stapler made an in-court identification of appellant as the man Stapler had apprehended in the shed; appellant was in the back of the courtroom wearing a robe at the time of identification. Stapler then identified a photograph of appellant as being a true and accurate representation of how appellant looked on the night of his apprehension. Stapler testified that the person he had been pursuing was the same person found in the shed; he formed this conclusion based on the size and height of the person, the race and sex of the person, the footprints in the snow to the shed (made by only one person), his eye contact with the suspect for a portion of the chase, and the clothing on the person when apprehended.

Appellant's accomplice testified, as a witness for the defense, that he had entered a guilty plea and was currently serving his sentence for the burglary of Hill's Laundry; on the night of the incident, he met appellant at an automobile shop where the witness was working; appellant had a backpack when he entered the shop; the witness knew appellant carried tools in the backpack but did not see them; before they left the shop, he told appellant that he needed to look for a place to stay; appellant followed the witness to Hill's Laundry; appellant was carrying his backpack; the witness entered the laundry through a hole in the building and went around to open the front door for appellant, but appellant was not there; the witness entered the van and started it to keep warm because he was planning on spending the night in the building; he did not enter the truck; then the police arrived at the building and the witness was apprehended.

Appellant testified that the co-defendant told him that he needed to accompany the co-defendant to another building; appellant thought the co-defendant said they were going to get some batteries. Appellant had his backpack with him; he had some tapes, a Koran, and three screwdrivers in the pack. The co-defendant went inside the fence of the building; shortly thereafter the police arrived. Appellant

heard the police order him to put his hands up and approach them; appellant complied, but the police suddenly appeared with the co-defendant whom they handcuffed. They walked away without looking in appellant's direction. Appellant concluded he had better depart from the laundry area so he climbed over a fence; at this point, an officer saw him and apparently pursued him. Appellant walked quickly to a nearby shed and once inside started to pray. Appellant conceded he was wearing an army coat and a black "coofie" cap when apprehended. Appellant denied that he went to the building to steal; he went only because he believed the co-defendant had something he wanted appellant to do there. *Held*:

1. On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Grant v. State*, 195 Ga. App. 463 (1) (393 SE2d 737). To support the verdict, circumstantial evidence must only exclude reasonable hypotheses; it need not exclude every inference or hypothesis except that of the defendant's guilt. *Smith v. State*, 257 Ga. 381, 382 (359 SE2d 662). Viewing the evidence of this case, we conclude that the jury rationally could have found that it excluded every reasonable hypothesis except that of the defendant's guilt. Review of the transcript reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the offenses of which convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Appellant's enumeration of error on the general grounds is without merit. See also Division 2 below.

2. Appellant also enumerates that the trial court erred in admitting, as a similar transaction, evidence of his prior conviction for burglary. Pretermitting whether the trial court erred in admitting this evidence (compare *Williams v. State*, 261 Ga. 640 (409 SE2d 649) with *Gearin v. State*, 208 Ga. App. 878 (432 SE2d 818); *Spinks v. State*, 204 Ga. App. 249 (419 SE2d 108); and *Smith v. State*, 203 Ga. App. 3 (416 SE2d 129)) is the question whether any error would have been harmless.

There exists in this case overwhelming evidence of appellant's guilt. Moreover, before the similar transaction evidence was admitted, appellant's counsel elicited during his cross-examination of a police officer that appellant had made a statement, at the time of his arrest, to the effect that "he had just gotten out of jail." In view of the overwhelming evidence of appellant's guilt, any error in admitting similar transaction evidence would not mandate a reversal as it was highly probable that the similar transaction evidence did not contribute to the guilty verdict. *Bowdry v. State*, 211 Ga. App. 626 (440 SE2d 59); see also *Tuggle v. State*, 211 Ga. App. 854, 857 (2d) (440 SE2d 740).

*Judgment affirmed. Blackburn and Ruffin, JJ., concur.*

DECIDED OCTOBER 31, 1994.

*Ronald B. Hatcher,* for appellant.
*Lewis R. Slaton,* District Attorney, *Rebecca A. Keel, Leonora Grant,* Assistant District Attorneys, for appellee.